SOUTHERN KANSAS RY. CO. OF TEXAS
v. WALLACE.

(Court of Civil Appeals of Texas. Amarillo. Dec. 21, 1912. Rehearing Denied Jan. 18, 1913.)

1. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—PLEADING—SUBMISSION OF ISSUES.

The overruling of exceptions to an allegation that the defendant carrier was negligent in not accepting baggage checks as evidence of right to transportation was harmless, where the only ground of recovery submitted by the court was the ejection after an offer to pay fare had been made.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

2. CARRIERS (§ 381*) — EVIDENCE — ADMISSIBILITY.

In an action against a carrier for ejection of a passenger, evidence that the conductor did not ask the ejected person whether she had any money or ask her for any was admissible, where there was evidence that the conductor told her she could do nothing but get off, to show that the conductor was hasty.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1482; Dec. Dig. § 381.*]

3. CARRIERS (§ 358*) — PASSENGERS — EJECTION—TENDER OF FARE.

A formal tender of money by one about to be ejected from a train is not necessary where the conductor in reply to an offer to pay said that the only thing to do was to get off.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1434–1438; Dec. Dig. § 358.*]

4. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—INSTRUCTIONS.

Though the court charged that, if the jury found that plaintiff was a passenger, the defendant owed her ordinary care, when in fact the carrier owed her a very high degree of care, the defendant cannot complain.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

5. CARRIERS (§ 383*)—QUESTIONS FOR JURY —EJECTION FROM TRAIN—EVIDENCE.

In an action against a carrier, evidence *held* sufficient to take the question whether defendant ejected plaintiff's wife to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1492–1496; Dec. Dig. § 383.*]

6. CARRIERS (§ 384*)—EJECTION OF PASSENGER—MISLEADING INSTRUCTIONS.

An instruction that if plaintiff purchased a ticket for his wife, and negligently permitted her to embark without the same, and that if such negligence, coupled with the negligence of defendant, was the proximate cause of the injuries, and without which such injuries would not have occurred, then the jury should find for defendant, was not misleading, as instructing that the negligence of plaintiff would not defeat his right to recover, unless it co-operated with the negligence of the defendant.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1497–1500; Dec. Dig. § 384.*]

7. CARRIERS (§ 370*) — NEGLIGENCE — EJECTING PASSENGER—DEFENSES.

Where a conductor refused to accept fare from plaintiff's wife or ejected her at an unsuitable place, the plaintiff's negligence in putting her on the train and forgetting to give her the ticket he had bought was immaterial to recovery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1459; Dec. Dig. § 370.*]

8. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS —INSTRUCTIONS GIVEN.

A requested charge that it was not sufficient in the absence of tickets that a passenger was willing to pay cash, and, unless such willingness was accompanied by some act or move suggesting such willingness, then ejection was justified, was covered by instructions given that unless the passenger offered to pay fare, and the conductor refused, he could not recover, so that the requested charge was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

9. TRIAL (§ 260*) — INSTRUCTIONS — GENERAL CHARGE—SPECIAL INSTRUCTIONS.

Where the general charge throughout made it plain that plaintiff could not recover for an ejection from a train unless an offer to pay fare was made, a special charge on such an issue was unnecessary.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

10. CARRIERS (§ 382*)—EJECTION FROM TRAIN —EXCESSIVE DAMAGES.

Where a conductor wrongfully put plaintiff's wife off a train in an insulting manner several miles from a station in a light shower, with her sick baby and a small child, and it was very muddy from several days' rain, and the child was taken sick with tonsilitis, and the baby's sickness aggravated, and she and the children were under the care of a doctor for two weeks, a verdict of $1,000 damages will not be held excessive.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1478, 1483–1491; Dec. Dig. § 382.*]

11. TRIAL (§§ 139, 140*)—PROVINCE OF JURY —WEIGHT OF EVIDENCE—CREDIBILITY OF WITNESSES.

The jury in the trial court is the judge of the credibility of the witnesses and the weight to be given to the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 334, 335, 338–341, 365; Dec. Dig. §§ 139, 140.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by C. H. Wallace against the Southern Kansas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Madden, Trulove & Kimbrough and F. M. Ryburn, all of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant. J. L. Penry and R. E. Underwood, both of Amarillo, for appellee.

HUFF, C. J. This is an action in the district court of Potter county, Tex., by C. H. Wallace, plaintiff, against the Southern Kansas Railway Company of Texas, defendant, to recover damages on account of the alleged ejection of plaintiff's wife from defendant's train May 4, 1910. Plaintiff alleged that on the morning of May 4, 1910, he took his wife and two children, together with his wife's brother, a boy of about 16 years of age, to defendant's station at Amarillo, Tex., for the purpose of embarking on defendant's train to Kansas City, Mo.; that, upon his assisting his wife and children upon the train, he was informed by defendant's agent that it would be necessary to check a certain go-cart; that he took his wife's ticket to check the go-cart and returned to the baggage room for that purpose, then returned, boarded the train to give his wife the baggage check, and in the rush incident to so doing, and while the train was beginning to move out, he delivered the check to his wife, forgetting to give her the tickets; that thereafter defendant's conductor requested tickets, and plaintiff's wife for the first time discovered that plaintiff had not returned them to her; that thereupon she asked if she could not wire for her tickets or pay her fare to Panhandle, which request was refused by the conductor, and plaintiff's wife and children were ejected from defendant's train about three miles from Amarillo, and were required to walk back to defendant's station in the rain and mud, causing plaintiff's wife and children to become sick and suffer humiliation, shame, etc. The petition further alleged she then requested the conductor to accept money according to the usual rate of transportation of herself and brother until her husband could have time after discovering his failure to deliver to her the tickets, as he would probably do, and would then telegraph the transportation to her or make other satisfactory arrangements with the defendant for her transportation, which request again being refused by said conductor, she requested him to accept money from her for transportation into some town along defendant's line of railroad, where she could receive for herself and children protection from the weather, and be saved from the humiliation of being put off the train in the presence of passengers and without protection, all of which requests were refused by the conductor, and the petition asks for damages in the sum of $10,000. Defendant answered to the merits by general denial and by plea of contributory negligence upon the part of the plaintiff in putting his wife and children on board said train without furnishing them tickets, and that said wife and children were negligent in failing to take proper steps to minimize their damages; that said persons not being in possession of tickets or other means of transportation, and without offering to pay cash fare, had no right to ride upon defendant's train, and defendant's conductor had the right and authority, and it was his duty under the law, to stop said train and to request plaintiff's wife and the persons accompanying her to alight therefrom, and that the defendant's conductor exercised ordinary care in so doing.

Trial was had before a jury, resulting in a verdict and judgment for the plaintiff in the sum of $1,000. We find in accordance with the verdict of the jury that the facts established that the wife of plaintiff, Mrs. Wallace, offered to pay railroad fare to Panhandle City on defendant's line of railway for herself and children and brother, and that the conductor in charge of the train refused to accept the same, and told her that all she could do was to get off. We also find the verdict of the jury establishes that the language used by the conductor was angry and harsh, and in the presence of the passengers then on the train was calculated to mortify and wound the feelings of the wife, and did do so, and that he did not use ordinary care in selecting a suitable place for the wife and her children to alight, and that, by reason of his negligence, the wife was damaged in the sum found by the jury. We find that the ground was wet and muddy from rains then falling and which had fallen the night and day previous, and that her garments were bedraggled and wet as contended by her, and that the train was at least a mile and a half from the depot to the point where she was put off of the train. We conclude that she was a passenger on the train and entitled to protection as such, and that the servants of appellant were negligent in putting her off at the point they did with her children and baggage, and that the injury was the proximate cause of such negligent acts on the part of defendant's servants.

[1] Appellant's first and second assignments of error complain at the action of the court in overruling its first and second special exceptions to plaintiff's petition, wherein it is alleged that defendant was negligent in refusing to accept the baggage checks in the hands of the wife of the plaintiff as evidence of her right to transportation, and to the allegation therein that defendant knew according to usage and custom of business that baggage checks would not have been issued if the holder had not exhibited a ticket

to the destination indicated in said baggage check as being insufficient to show negligence.

The only grounds of negligence submitted by the court were that, if plaintiff was a passenger on said train by reason of an offer by her to pay fare to Panhandle, then it was negligent to require her to leave the train, and, if she was not a passenger on said train, then whether or not appellants used ordinary care in ejecting her therefrom in a proper manner, and in selecting a proper place for her to leave the same. The court did not submit the question of negligence alleged to the effect that the conductor failed to accept the baggage check as evidence of transportation, or that it knew of the custom so alleged and negligently refused said check. If there was any error in overruling the exceptions to the petition, it was harmless, and it is not shown in any way to have injured the appellant. Railway Co. v. Johnson, 24 Tex. Civ. App. 180, 58 S. W. 622; Bolton v. Prather, 35 Tex. Civ. App. 295, 80 S. W. 666; Railway Co. v. Beene, 47 Tex. Civ. App. 585, 106 S. W. 456; Railway Co. v. Pate, 113 S. W. 994.

[2] The third and fourth assignments complain at the action of the court in permitting the witness, Mrs. C. H. Wallace, to testify, over the objection of appellant, that the conductor did not ask her if she had any money, and did not ask her about any money at all, and to answer the question: "State whether or not he (the conductor) made any inquiries or what, if any, inquiries did he make about your paying or your ability to pay fare and continue on your journey?" To which she answered: "He did not ask any question at all." It was objected that the testimony was immaterial and irrelevant, and because it was not the duty of the conductor to request fare, since fare must be tendered to give a passenger the right to ride in the absence of a ticket. Mrs. Wallace had on direct examination testified she had $20 with her, and that her brother had $25. The testimony complained of appears to have been brought out on redirect examination, in which she was asked as to what the conductor had said to her about the transportation. She had said to the conductor: "Can I pay my way to Panhandle, and pay you for sending a telegram back, and certainly we can manage some way out of this." The conductor said all he knew was to get off. He had previous to this signaled to stop the train. After the train stopped and she had been informed that the only thing to do was to get off, she testified she again asked if there was not some way to manage so that she could go on, and not be put off in the rain, and that she again told the conductor that she would pay for a telegram, and asked him if he could not send one back. While it was not the duty of appellant to carry appellee's wife to the station without paying fare or offering to do so, she evidenced a willingness to

do so and had money with which to pay the fare, if her testimony is to be believed, and the jury appears to have done so. The conductor stated to her all he knew was for her to get off. If this was true, she did not have to make an actual tender of the money, nor perhaps make a specific offer. The testimony tended to show that the conductor was hasty in the matter, and did not act with that consideration which the relation of the parties at the time and under the circumstances demanded. The testimony was explanatory of his act and conduct and the transaction itself, to which the jury was entitled. Railway Co. v. James, 82 Tex. 306, 18 S. W. 589, 15 L. R. A. 347; Railway Co. v. Bunn, 41 Tex. Civ. App. 503, 95 S. W. 640; Railway Co. v. Bond, 62 Tex. 446, 50 Am. Rep. 532; Railway Co. v. Patterson, 7 Tex. Civ. App. 451, 27 S. W. 197; M., K. & T. Ry. Co. v. Brown, 135 S. W. 1076.

[3] The fifth assignment of error is to paragraph No. 1 of the court's charge, because, as it is asserted, the court instructed the jury that the plaintiff's wife was a passenger if she offered to pay fare without regard to her ability to pay fare and without regard to her willingness to do so. The court charged the jury that if plaintiff's wife "then and there offered to pay to the agents, servants, and employés of defendant company a sufficient sum of money to entitle her and said brother as well as her child or children, to be transported to Panhandle City, Carson county, Tex., on said train, and that the agents, servants, and employés of defendant company at said time refused to accept from the plaintiff's wife a sufficient sum of money to entitle her and her said brother and her child or children to be transported on said train to said Panhandle City, then and in that case you are instructed that the plaintiff's said wife and her child or children and her said brother were passengers on said train, and it was the duty of defendant, its servants and agents, to transport plaintiff's wife to Panhandle City." We do not think the charge subject to the objections made. It is peculiarly applicable to the facts of the case. A formal tender was not necessary, and an expression of a desire to pay the fare and the conductor's reply that all that was left for her to do was to get off the train was certainly sufficient evidence for the court to submit to the jury whether she offered to pay the fare and whether the conductor refused it. Certainly, if she offered to pay the fare and the conductor refused it, that was all she could do, and, if he then put her off the train, he was in the wrong, and his company liable for the consequent damages. Authorities supra.

[4] Appellant's sixth assignment of error complains of the court's charge, paragraph No. 2. As has heretofore been stated, the trial court submitted to the jury the ques-

tion whether appellee's wife became a passenger upon an offer on her part and refusal by the conductor of the fare; and whether he was negligent in ejecting her at the time and place he did under the circumstances. If she was a passenger, then appellant owed her a very high degree of care. This the court did not give in charge to the jury, of which we see no cause for complaint on the part of appellant. The paragraph complained of applies the rule of ordinary care on the part of appellant in case the jury should find appellee's wife was not a passenger on its train at the time she was required to quit the same. We do not think the charge injured appellant, and therefore overrule the assignment.

[5] The seventh assignment complains that the court was in error in the sixth paragraph of the charge, for the reason there was no evidence to show that the servants of appellant required appellee's wife to leave the train. The fact as testified to by Mrs. Wallace shows that when she explained the situation to the conductor that she had only her baggage checks; that her tickets were left with her husband, he pulled the bell rope, and told her: "You can't ride on baggage checks on my train. It takes tickets to ride." She testified: "Can I pay my way into Panhandle, and pay you for sending a telegram back? I said he [meaning her husband] will discover it, and telegraph us. He is working at the St. Charles Apartments, and I said certainly we can manage some way out of this, and he said all he knew was to get off. I told him my baby was sick, and I was leaving for his health, and, if I can get to my mother, I can get him through the summer. I did not want him put off in the rain. He said, 'All I know is to get off,' and at that time the rest of the passengers were staring and gaping at us. After that I was glad to get off if that was all." On cross-examination, among other things, she testified: "There was no reason to keep him from carrying me on if I paid my money, but he did not do it. That is what I do not understand. He said the only thing to do is to get off. He did not take hold of me. I do not know whether you would call it advice. He said, 'All I know is to get off,' and he was not very kind about it either." After the train stopped, she decided the only thing for her to do was to get off, and she walked out towards the front end of the car. There was no personal violence used in ejecting her from the train. We do not think the court was in error in submitting the question to the jury as to whether appellee's wife was compelled to leave the train. True there was no violence used—no positive command made to leave. The conductor, according to Mrs. Wallace's testimony, said: "It takes tickets to ride." She had none. He would not recognize her checks, and to her offer to pay

fare to Panhandle she received the reply, "All I know is to get off." Situated as she was, with two babies and a small brother, all that was left her to do was to get off. Her testimony is sharply contradicted, but the conflict was for the jury to reconcile, and we think the court was not under the facts in error in submitting to them the question for their determination. Railway Co. v. Bunn, 41 Tex. Civ. App. 503, 95 S. W. 640; Railway Co. v. Patterson, 7 Tex. Civ. App. 451, 27 S. W. 194. The other objections in regard to this charge we do not think tenable, and the charge is not subject to the criticism made thereto.

The eighth assignment to the seventh paragraph of the court's charge is overruled for the reasons above stated, and for the further reason that this charge was an instruction for the appellant if the jury should find that Mrs. Wallace was not a passenger, and if they found appellant's servants used ordinary care with reference to the place for alighting and in their conduct and language towards Mrs. Wallace.

[6] The ninth assignment complains that the court erred in the ninth paragraph of its charge to the jury, in that it is complained that it is misleading, in that the jury is instructed that the negligence of plaintiff would not defeat his right to recover, unless it co-operated with the negligence of defendant. The charge is not so limited. The jury are instructed that if plaintiff purchased for his wife a ticket, and negligently and carelessly permitted his said wife to embark without same, and that if such negligence, coupled with the negligence of defendant, was the proximate cause of the injuries, and without which such injuries would not have occurred, then the jury were instructed to find for defendant, and so say by their verdict. Certainly there was no injury to appellant in this instruction. We regard the charge as presented under the facts of this case more favorable to appellant than it was entitled.

[7] If Mrs. Wallace offered to pay her fare, and the conductor refused the same, or if appellant refused to select a suitable place at which to alight and failed to use ordinary care in ejecting Mrs. Wallace from the train, then the negligence of the appellee in the failure to deliver his wife the tickets at the station became immaterial as to such subsequent conduct of the conductor, and could not have defeated appellee's right of recovery based on such after acts of negligence on the part of appellant. Railway Co. v. Culpepper, 19 Tex. Civ. App. 182, 46 S. W. 922; Mitchell v. Western Union Telegraph Co., 12 Tex. Civ. App. 262, 33 S. W. 1016; Eads v. City of Marshall, 29 S. W. 170.

[8] The tenth assignment of error complains at the action of the court in refusing to give in charge special instruction No. 3. Without setting out this charge, we think

the general charge of the court sufficiently presented the propositions involved therein, as far as applicable to the facts. In the court's general charge, paragraph 1, the jury are instructed that if Mrs. Wallace offered a sufficient sum of money to pay her fare, and the conductor then refused to accept it, she would become a passenger, and it would then be the duty of appellant to transport her as such. In the sixth paragraph the jury were told if the conductor compelled Mrs. Wallace to leave the train, and at that time she was not a passenger on said train, as that term had been defined in the first paragraph of the charge, but further find he did not use ordinary care in selecting the place, etc. And in the seventh paragraph of the general charge the jury were instructed if Mrs. Wallace was compelled to leave said train, and she was not at that time a passenger thereon as that term has been defined, and if they further found defendant used ordinary care in the selection of a reasonably safe place and suitable place to leave the train, and the agents were not guilty of using language of such character reasonably calculated to produce in the mind of Mrs. Wallace humiliation, etc., and used ordinary care in requiring her to leave the train, taking into consideration the weather, etc., then they should find for the defendant company. In the fifth paragraph the jury were instructed to bear in mind the foregoing definitions, and if they found Mrs. Wallace was a passenger as thereinbefore described, and defendant's servants negligently compelled her to leave the train at the time and place and under the circumstances set out in plaintiff's petition, to find for plaintiff. The special charge No. 3 requested by appellant asked the court to instruct the jury that it was not sufficient in the absence of tickets that she be willing to pay cash fare to the next station on defendant's line of railway or to some other point, and, unless such willingness to pay fare was accompanied by some act or move suggesting such willingness to defendant's conductor, then said conductor would be justified in stopping said train and putting said person off same, provided he used ordinary care in so doing. Appellant cites us to the case of Railway Co. v. James, 82 Tex. 306, 18 S. W. 589, 15 L. R. A. 347. In that case it was said: "There was no evidence tending to show that the plaintiff offered to pay his fare to the next stopping place, nor was any fact proven from which the conductor could have inferred that he desired to do so." Again that court said: "There was no evidence tending to show that the conductor would not have carried him had he offered to do so, and, in the absence of such evidence, it is not to be presumed that the conductor would have unlawfully ejected him." In this case Mrs. Wallace testified that, when she told the conductor she could pay her way to Panhandle and pay to send a telegram back, the reply she got from the conductor was that he knew of no way

except for her to get off. The train was then being stopped, and he had previously told her it took tickets to ride. She did get off, protesting she did not want to because her baby was sick, and that it was raining. The court charged the jury if she offered to pay, and the conductor refused the fare, she would be a passenger, and again she could not recover as a passenger unless she offered to pay and the conductor refused. Again, if she was not a passenger as above defined, appellant should not recover on that ground. We think the court's charge fairly presented the issue in his general charge requested by the special charge of appellant. Railway Co. v. Patterson, 7 Tex. Civ. App. 451, 27 S. W. 197; Railway Co. v. Bunn, 41 Tex. Civ. App. 503, 95 S. W. 640.

The eleventh assignment complains of error in the court's refusal to give special charge No. 4. What has been said with reference to charge No. 3 will be applied to this assignment, and it is therefore overruled.

The twelfth assignment is overruled. It is presented on the refusal of the court to give appellant's special charge No. 5. The court in its general charge, paragraph 10, covered the point fully requested by appellant's charge No. 5. It is not necessary to discuss the matter further at this time.

[9] The thirteenth assignment is also overruled, for the reason that the court had in its main charge submitted the issue both affirmatively and negatively embraced in the special charge No. 7 requested by appellant. The verbiage is different, but the idea is the same in both charges, and we cannot see how the jury could have been misled and unable to understand the issue as presented by the court.

We are of the opinion in view of the fact from the beginning to the end of the general charge that it was impressed upon the jury that they must find that Mrs. Wallace offered to pay the fare, and that the conductor refused to accept it, that it was not necessary to again present the issue by the special charge in different language. So the issues are presented for the consideration of the jury is all that is required by the charge of the court. Judge Head said, in the case of Railway Co. v. Neill, 30 S. W. 369: "We think our Supreme Court has announced a wholesome rule, which should be generally applied, when it said in Railway Co. v. Corley [87 Tex. 432], 29 S. W. 231: 'This court, however, will look to the whole charge as well as the evidence and verdict to determine whether or not it is probable that the technical error in the framing of the charge has worked any injury to the defendant.'"

[10] The fourteenth assignment of error is to the effect that the verdict of the jury is exorbitant and excessive. The verdict in this case was for $1,000. The weather was cold enough that plaintiff was wearing an overcoat at the time his wife left on the train. The testimony is to the effect that

the morning was raw and damp and drizzly. Considine, observer for the United States Weather Bureau, testified that between the hours of 7 and 8 a. m. there was a rainfall of a one hundredth of an inch and that the same would be called a light shower; that the temperature of 7 a. m. was 42 and 8 a. m. was 43, and that it rained during the night and the day previous. Mrs. Wallace took the train between 7 and 8, and left the train between those hours. Mrs. Wallace testified that the ground was soft and muddy and kept rolling up over her shoes, and her skirts became bedraggled and wet, and her feet and stockings wet enough so that water could be wrung from her stockings, and that all of her wearing apparel had gone on the train to Kansas City except that which she was wearing. She had with her two children, two suit cases, a pillow, a lunch basket, and other luggage which she was required to bring back with her; that she was exhausted and asked permission to ride in on a hand car, and came into the station at Amarillo on a hand car; that it took her, walking and on the hand car, 40 minutes to get from the place where she left the train to the depot, and that she thought it was between a mile and a half and two miles from the station that she was put off the train; that after this she and the children had colds; that her oldest boy had a spell of tonsilitis, and that the baby's sickness was aggravated by cold contracted at said time; that she and her children were under the care of a doctor, taking medicine for about two weeks. She also testified before the conductor heard her explanation or gave her time to decide what she should do, he stopped the train, and in an angry and insulting manner said: "You can't ride on a baggage check on my train. It takes tickets to ride on this train." The passengers were staring at her, and it was humiliating to her, and they followed her onto the platform of the car. She protested she did not want to get off with her baby in the rain. We are not prepared to say the jury, under the facts, as found by them, were not warranted in giving the plaintiff the damages assessed by the verdict. They heard the witnesses, and were in a better position than we to judge of their testimony. There is nothing in the record evidencing passion and prejudice. We do not therefore feel warranted in disturbing the verdict. If appellant's witnesses are to be believed, plaintiff had no cause of action. Mrs. Wallace was not a passenger on the train, and the servants of appellant used ordinary care in assisting Mrs. Wallace and her children off the train, and that the place was a proper one at which to discharge them.

[11] It being the peculiar province of the jury to judge of the credibility of the witnesses and the weight to be given to the testimony, we do not feel warranted in dis-turbing the verdict on the ground of the insufficiency of the evidence.

We find no such error as requires a reversal at our hands, and the case is therefore affirmed.