[No. 2910. Decided June 14, 1898.]

THE BOARD OF CHURCH ERECTION FUND OF THE GENERAL ASSEMBLY OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, *Appellant*, v. THE FIRST PRESBYTERIAN CHURCH OF SEATTLE, *Defendant*, WALTER MORGAN, *Respondent*.

LIMITATIONS OF ACTIONS — PERSONAL PLEA — DEMURRER — RESTRAINT ON ALIENATION — PUBLIC POLICY — MORTGAGES — PAYABLE ON CONTINGENCY — WHAT CONSTITUTES ALIENATION.

The defense of the statute of limitations is a personal privilege, and can be pleaded only by the person directly entitled to the benefit of it; it cannot be set up by other defendants in the action.

A demurrer to a complaint on the ground that it does not state facts sufficient to constitute a cause of action will not permit the objection to be urged that the action is barred, as that question should be raised by demurrer on the ground that the action was not commenced within the time limited by law.

A covenant in a mortgage that in case the mortgaged premises should ever be alienated or abandoned for church purposes the mortgage debt should become due and payable is not void as being in restraint of alienation.

A covenant in a mortgage given by a Presbyterian church for money loaned from the erection fund of the General Assembly of that denomination, that the debt should become due if the church should cease to be connected with the General Assembly, is not a covenant contrary to public policy nor in restraint of religious belief.

A mortgage is not void because the debt is made payable upon the happening of a contingency and no time for payment is mentioned in the mortgage.

A covenant in a mortgage providing that in case the mortgaged premises be alienated or abandoned as a house of worship, except for the building or purchase of a better one, the mortgage should become due and subject to foreclosure, is broken by the mortgagor's allowing the property to be sold on execution and the church to be dispossessed of the premises by the issuance of a writ of assistance to the purchaser.

Appeal from Superior Court, King County.—Hon. WM. HICKMAN MOORE, Judge. Reversed.

*James M. Gephart (Strudwick & Peters*, of counsel), for appellant:

To constitute an alienation of the premises it was not necessary that the church corporation should make a voluntary conveyance. The law can alienate the property as effectually. The words of the mortgage are, " shall be alienated." *Tillinghast v. Bradford,* 5 R. I. 205. A foreclosure sale is an alienation. *Mount Vernon Mfg. Co. v. Fire Ins. Co.,* 10 Ohio St. 348; *Clement v. Shipley,* 2 N. D. 430 (51 N. W. 414); *Parker v. Dacres,* 2 Wash. T. 440. Confession of judgment and sale by the sheriff in pursuance of that judgment is an alienation. *Stansbury v. Patent Cloth Mfg. Co.,* 5 N. J. Law, 505. Alienation may be voluntary or involuntary; either is within the terms of the mortgage. 1 Freeman, Executions (2d ed.), §§ 189, 190;

2 Blackstone, Commentaries, pp. 348, 357; *Burbank v. Rockingham Mutual Fire Ins. Co.*, 24 N. H. 558 (57 Am. Dec. 300).

*Allen & Allen,* for respondent:

There can be no difference in principle between covenants in restraint of alienation contained in a mortgage and those contained in a conveyance of the fee. *DePeyster v. Michael,* 6 N. Y. 467 (57 Am. Dec. 470); *Bouldin v. Miller,* 28 S. W. 940; *Pritchard v. Bailey,* 18 S. E. 668; *Prey v. Stanley,* 42 Pac. 908.

The main ground upon which the demurrer was sustained by the court was that breach of the conditions of the mortgage had been shown. The only facts alleged as constituting a breach were that the sheriff had sold the property under an execution in favor of the respondent, and that at the sale the respondent had become the purchaser and the sale had been confirmed and the respondent put into possession of the property. A sheriff's sale is not an alienation. *Conover v. Mutual Ins. Co.,* 3 Denio, 254; *Masters v. Ins. Co.,* 11 Barb. 624; *Trumbull v. Ins. Co.,* 12 Ohio, 305; Bouvier, Institutes, 1992.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought to foreclose a mortgage on certain lots in the city of Seattle. The complaint alleges that the plaintiff was a corporation organized and existing under the laws of the state of New York; that the defendant, the First Presbyterian Church, was a corporation organized and existing under the laws of the state of Washington; that the defendant, Walter Morgan, was doing business as Walter Morgan & Co.; that on May 12, 1893, the First Presbyterian Church of Seattle made and executed, by proper authority of law, its mortgage on the

said lots to the plaintiff to secure a loan of $2,160, of a prior date; that the mortgage, in addition to the usual covenants, recited that in case the house of worship or the mortgaged premises should be alienated or abandoned as a house of worship by the party of the first part, except for the building or purchase of a better house of worship, then and in such case the defendant church should forthwith refund the money with interest thereon from the time of receiving it; that, upon the happening of either of such contingencies, said amount with interest should immediately become due and payable, with the other ordinary provisions with relation to the right of the mortgagee to sell the property; that the mortgage was duly recorded; that the First Presbyterian Church has failed to comply with the terms, conditions and agreements of said mortgage; that on the 28th day of May, 1897, the sheriff of King county sold said property under an execution to defendant Walter Morgan & Co., and said sale was confirmed by the court of King county, June    , 1897, and by the said sale Walter Morgan & Co. claim to have an interest or title to the property; that on June 14, 1897, by reason of said sale, the First Presbyterian Church was dispossessed of said premises by a writ of assistance issued out of said court on petition of Walter Morgan & Co., and enforced by the sheriff of King county. The plaintiff asked judgment against the First Presbyterian Church for the sum of $2,160, with interest thereon at the legal rate; for the foreclosure of the mortgage, and for a receiver to care for and conserve the interests of the property. The First Presbyterian Church made default. Defendant Walter Morgan filed a general demurrer to the complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action, and upon hearing the court sustained the same. The plaintiff standing upon its complaint and refusing to plead further, a judg-

ment of dismissal was in due time entered. From this judg-
ment an appeal is taken to this court. A motion is made to
dismiss this appeal, but we think it is without merit.

It is contended by the respondent that the demurrer was
properly sustained for the reason, (1) that it appeared from
the complaint that the cause of action—the consideration
of the mortgage—was barred by the statute of limitation;
(2) that the mortgage was void because of its covenants be-
ing contrary to public policy and in restraint of alienation;
(3) because the time when the debt was supposed to become
due was vague, uncertain and indefinite;  (4) because there
had been no breach of the conditions and no right to fore-
close appeared. There are many answers to the first con-
tention, viz., that the debt, which had been contracted sev-
eral years before the mortgage was given, was barred by
the statute of limitation, but it is necessary to mention only
two. In the first place, a pleading of the statute of limi-
tations is a privilege which is accorded by the law to the
defendant—in this case the Presbyterian Church—and it
can avail itself of that privilege, or answer upon the merits,
or default, just as it pleases. It is not a right which defend-
ant Walter Morgan can receive the benefit of. Second, it
was not pleaded in the court below. The demurrer inter-
posed was upon the ground and for the reason that the com-
plaint did not state facts sufficient to constitute a cause of
action. This is the sixth cause of demurrer which is speci-
fied by the statute. The seventh is that the action has not
been commenced within the time limited by law. This
objection may be taken by demurrer when it appears upon
the face of the complaint. Otherwise it may be made by
answer. But it is not comprehended within the sixth
clause which provides for a demurrer when the complaint
does not state facts sufficient to constitute a cause of action,
and the question cannot be raised under the sixth objection

any more than upon the other grounds for demurrer speci-
fied by the statute, viz., that the court has no jurisdiction
of the person of the defendant or of the subject matter of
the action, or that the plaintiff has no legal capacity to sue,
or that there is another action pending between the same
parties, or that there is a defect of parties plaintiff or de-
fendant, or that several causes of action have been improp-
erly united.   When the attention of the court is intended
to be directed to any of these specified grounds for demurrer
it must be directed as specified by statute.

The next contention is that the covenants of the mort-
gage were contrary to public policy and also in restraint of
alienation.   We do not think there is any alienation in this
mortgage at all.   It is true that where an estate is conveyed
in fee simple, a proviso that the grantee shall not convey,
or shall not convey without the consent of the grantor, is
held to be void as a restraint upon alienation, because it is
repugnant to the estate which has been created by the debt
for the benefit of the grantee.   But no estate was created
by this mortgage.   The title to the land, both legal and
equitable, remained in the mortgagor.

We have examined the cases cited by the respondent,
upon which he so confidently relies, and we do not think
they are in point at all.   The principal case, and one in
which the authorities are collated, is *DePeyster v. Michael*,
6 N. Y. 467 (57 Am. Dec. 470).   In that case there was a
lease of lands in fee, and in addition to the annual rent the
lessor reserved to himself, his heirs and assigns, the right
to purchase the premises, in case the lessee, his heirs, etc.,
should choose to sell, on paying three-quarters of the price
demanded, the lessee covenanting to make the first offer
to the lessor, his heirs, etc., on those terms, but in case the
offer should be declined, then the lessor reserved to himself,
his heirs, etc., one-fourth part of all moneys which should

arise from the selling, renting or disposing of the lands by
the lessee, his heirs or assigns, when and as often as the same
should be sold, rented or disposed of; with the condition
that in case of a sale or other transfer, without the payment
of such one-fourth to the lessor, his heirs or assigns, the sale
or transfer should be void, and the premises should revert
to the lessor, his heirs and assigns, who might then re-enter
upon the premises and repossess and enjoy the same as of his
former estate; and it was held that a reservation of the
quarter sales and the condition and right of re-entry upon
default of their payment were void. But the case and the
arguments advanced and cases cited show conclusively that
the doctrine contended for could not be applied to the
conditions specified in this mortgage. The mortgagors are
not prevented from selling this property. No restrictions
are entailed upon it. But the effect of the stipulation or
condition expressed simply is that if it is alienated or aban-
doned or not used for the purposes for which the money was
loaned, the mortgage becomes due; and if a sale were
made, it would simply be made subject to the mortgage.

It is also contended that the mortgage is contrary to pub-
lic policy, for the further reason that it provided that the
debt should become due if the church should cease to be
connected with the General Assembly; that this is a re-
straint upon religious belief, and a court of equity should
not uphold such contract. We do not see any merit in this
contention. There is no restraint here upon any one's reli-
gious belief. The board of church erection has a right to
invest its money for the promotion and benefit of the Pres-
byterian churches in the United States, if it sees fit so to
do. Presumably low rates of interest and liberal time are
given by this association for the purpose of promoting the
interests of the church, and favorable conditions are ob-
tained which could not be obtained from any one else; and

there is nothing wrong or intolerant or against public policy in sustaining conditions which would prevent their money from inuring to the benefit of secular business.   If conditions like these cannot be enforced, then church edifices, which the society has been instrumental in building, might be used for dance houses, theatres, drinking saloons, and for other businesses which are not only foreign to the object of the promoters, but in direct opposition to their principles.

The third objection is that the mortgage was void because the time when the debt was to become due was vague, uncertain and indefinite.   We think this is a provision of the mortgage which the mortgagor cannot take advantage of. 2 Jones, Mortgages, §§ 1183-84-85.   Where the debt is made payable upon the happening of a contingency and no time for payment is mentioned in the mortgage, the mortgage is good.   *Fetrow v. Merriwether*, 53 Ill. 275; *Belmont County Branch Bank v. Price*, 8 Ohio St. 299; 3 Pomeroy, Equity Jurisprudence, § 1188.

It is in the fourth place contended by the respondent that no breach of the conditions of the mortgage has been shown, and that consequently a foreclosure could not be had.   A number of authorities are cited by both appellant and respondent, as to when the legal title passes and as to whether the legal title to land passes upon the sale or upon the confirmation of sale.   It was said by this court in some of the cases cited, notably *Hays v. Merchants' Bank*, 10 Wash. 573 (39 Pac. 98), that the discussion of the title proposition was a discussion of a theory and did not affect the practical questions in that case; and so we think concerning that technical question here.   This mortgage provides that in case the mortgaged premises be alienated or be abandoned as a house of worship by the party of the first part, except for the building or purchase of a better one, the mortgage

should become due, and that the mortgagee shall have power to foreclose the same.    The complaint alleges that this property was sold under an execution issued out of the superior court to the  defendant Walter Morgan, and that the sale was confirmed;   that Walter Morgan & Co. have closed the door of the church;   that the church has been dispossessed of said premises by a writ of assistance issued out of the court, and that the said Walter Morgan was thereby put in possession of the premises.    It seems to us that within the spirit of the contract this was an alienation.    The church had refused or failed to pay its legal obligations;   the law in the enforcement of those obligations dispossessed it,  and in legal contemplation and for the purpose of construing this mortgage and giving effect to the intention and purposes of the mortgagor, the possession which was given to Morgan must be held to be a possession given by act of the mortgagee.    We think that plainly there was a breach of the covenants of the mortgage, and that the court erred in sustaining the demurrer to the complaint.

The judgment will be reversed.

SCOTT, C. J., and GORDON and REAVIS, JJ., concur.

ANDERS, J., not sitting.